829 N.E.2d 1032 (2005)
In re the Matter of R. J., a Minor Child,
Roderick Johnson, Appellant-Respondent,
v.
Lake County Office of Family and Children, Appellee-Petitioner.
No. 45A05-0411-JV-614.
Court of Appeals of Indiana.
June 28, 2005.
*1033 James J. Krajewski, Munster, for Appellant.
Yolanda Holden, Robert L. Lewis & Assoc., Gary, for Appellee, Lake County Office of Family and Children.
Elizabeth G. Tegarden, Crown Point, for Appellee, Lake County CASA Program.

OPINION
BARNES, Judge.

Case Summary
Roderick Johnson appeals the termination of his parental rights. We reverse.

Issue
Johnson raises two issues. However, we address only one dispositive issue, which we restate as whether there is clear and convincing evidence to support the termination of his parental rights.

Facts
In June 2000, the Lake County Office of Family and Children ("OFC") filed a petition alleging that three-year-old R.J. was a child in need of services. At that time, R.J. was removed from her mother's custody and placed into foster care. R.J.'s father, Johnson, was located, and he established paternity of R.J.
Case plans were established for both parents. R.J.'s mother did not comply with the plan. Johnson completed the services required of him. He attended parenting classes and psychological evaluations and maintained regular visitation with R.J. Although Johnson's first drug screen was positive for marijuana, he completed substance abuse counseling and all subsequent drugs screens were negative. *1034 Johnson also rented an apartment and obtained a full time job at the homeless shelter at which he had resided when these proceedings began.
After placement in two foster homes, R.J. was finally placed in the Gould home in August 2002, where she remains. The Goulds have offered to adopt R.J.
On July 3, 2003, the OFC filed a petition to termination R.J.'s parents' parental rights. Following a hearing, the trial court granted the OFC's petition and issued an order that provides in part:
The allegations of the petition are true:
The child(ren) has been removed from the parent and has been under the supervision of the [OFC] for at least fifteen (15) of the most recent twenty-two (22) months.
There is a reasonable probability that the conditions resulting in the removal of the child from her parents' home will not be remedied in that:
* * * * *
Father was offered services but failed to accept them.
* * * * *
Father has substance abuse issues.
Father has also tested positive for marijuana.
Father has shown some erratic behavior including being homicidal, threatening to burn down the visitation site, and threatening to shoot the drug screener.
Neither parent has successfully completed the case plan program.
Neither parent is providing any financial support for the child.
Neither parent is likely to regain custody of their child.
Child has not lived alone with father.
* * * * *
Child has been in foster care since 6/30/00.
Child has lived in current foster home for two years.
Father has failed to provide safe and adequate housing for himself and his young daughter. Father has failed to have a safe plan of care for his young daughter while he is at work. Father has mental health issues that are ongoing and that he has failed to effectively address.
The child has bonded with foster parents and does not want to be removed from them. Child does not want to live with father, which she has never lived with alone. Child has been in foster care over half her life.
There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child in that: For the same reasons stated above.
It is in the best of the interest of the child and her health, welfare and future that the parent-child relationship between the child and her parents be forever fully and absolutely terminated.
The [OFC] has a satisfactory plan for the care and treatment of the child which is Placement in a permanent adoptive home environment and supervision in placement pending granting of adoption.
Appellant's App. pp. 10-11. Johnson now appeals.[1]

*1035 Analysis
The Fourteenth Amendment to the United States Constitution protects the rights of parents to establish a home and raise their children. In re D.D., 804 N.E.2d 258, 264 (Ind.Ct.App.2004), trans. denied. Parental interests are not absolute, however, and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Id. at 264-65. "Parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. "The purpose of terminating parental rights is not to punish parents but to protect children." Id.
When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of the witnesses. Id. We consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Where the trial court enters findings of fact, we determine whether the evidence supports the findings and then whether the findings support the judgment. Id. The trial court's findings and judgment will be set aside only if they are clearly erroneous. Id. A findings is clearly erroneous if there are no facts or inferences drawn therefrom that support it. Id. A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.
Indiana Code Section 31-35-2-4(b)(2) requires that a petition to terminate a parent-child relationship involving a child in need of services allege that:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding . . . that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
The OFC must establish these allegations by clear and convincing evidence. D.D., 804 N.E.2d at 265.
The parties appear to agree that the only issue is whether the OFC presented clear and convincing evidence that the conditions resulting in R.J.'s placement outside the home will not be remedied or that the continuation of the parent-child relationship poses a threat to R.J.'s well-being. Johnson argues that several of the trial court's findings are not supported by the evidence.
Johnson suggests there is no evidence to support the trial court's findings that he was offered services but failed to accept them and that he "has substance abuse issues." Appellant's App. p. 11. We agree. By all accounts, Johnson completed all of the services offered to him, including substance abuse counseling, and *1036 except for the initial drug screen, none of the random drug screens were positive. These findings are not supported by the evidence.
Johnson also asserts that there is no evidence to support the trial court's finding that neither parent is providing support for R.J. As Johnson points out, there was no court order or other requirement that he provide such support. In fact, the evidence indicates that Johnson often gave R.J. gifts of clothing and toys during his visits with her. To the extent that this finding implies that Johnson was in some way legally required to provide support for R.J., it is unsupported by the evidence or, at best, misleading.
Johnson contends that the trial court's finding that he engaged in erratic "homicidal" behavior and threatened to burn down a visitation site and shoot the drug screener is unsupported by the evidence. App. p. 11. We agree. Although this finding contains a very specific account of an incident, there is no evidence that Johnson engaged in any such behavior or that such an incident ever occurred. In fact, CASA concedes, "To the extent that the evidence does not support the specific behaviors enumerated by the court, CASA contends the enumerated behaviors are superfluous to the finding if not the judgment and any error is harmless." Appellee CASA's Br. p. 21. We do not agree that a finding containing such a detailed recitation of threatening behavior is harmless. There is zero evidence in the record that such an event occurred. Thus it is unsupported.
Johnson also argues that there is no evidence to support the trial court's finding that he has ongoing mental health issues and has failed to effectively address the issues. The caseworker initially involved in the case testified that when the proceedings began and Johnson was trying to establish paternity he was asked his address and social security number. In response to these questions, Johnson became, "very argumentative, somewhat confrontational, teetering on paranoid." Tr. p. 15. The caseworker later testified that she did not have training to say that her description of "paranoid" was a medical condition and that it was just her opinion. When asked if Johnson followed through with the ongoing counseling and a psychological evaluation, the caseworker said she was not sure because she was transferred from the case. There is no indication that Johnson failed to complete any of the OFC's required services.
In fact, the confidential psychological evaluation revealed that Johnson was oriented to person, place, and time, that his thoughts were organized and goal directed, that there was no evidence of unusual thought content including hallucinations, delusions, or obsessions, and that he was consistently respectful and cooperative throughout the evaluation. The report recommended that he develop a "cohesive and well-defined plan" for R.J.'s care and address her special needs because she is learning disabled. Appellant's App. p. 20. The report also recommended that Johnson attend parenting classes to help him develop effective parenting skills and that intensive in-home case management be provided if he regains custody of R.J. The report also recommended individual therapy to address issues relating to his past and social isolation and to learn effective stress management techniques and involvement in community and church organizations to reduce risk factors associated with those isolation and high-stress situations.
Johnson was not diagnosed with any psychiatric disorders and the OFC did not require further participation or completion *1037 of services by Johnson before the trial court terminated his parental rights. Although the evaluation indicates concerns of social isolation and high stress, this is not evidence supporting the trial court's finding that Johnson has "ongoing mental health issues that he has failed to effectively address." Appellant's App. 11.
Neither Appellee specifically disputes Johnson's assertions that the evidence does not support the findings regarding drug use, support, behavior and mental health, and completion of the required services. However, the parties disagree as to whether there is evidence supporting the trial court's finding that Johnson failed to provide safe and adequate housing for himself and R.J. and that he failed to have a safe plan for R.J. while he was at work. This appears to be the primary issue on appeal.
The OFC's witnesses at the hearing stated that the apartment building was not suitable for a child. Their reasons for this conclusion varied. The current caseworker explained that the apartment building was not suitable because there was no playground for R.J., that he did not see other children in the building, and that it was on the fifth floor of the building. Another witness testified that it was unsuitable because of the nature of people who resided in the building. The Court Appointed Special Advocate ("CASA") testified that although she had never met Johnson or seen the apartment, she had been in the building ten years ago and it was unsuitable for a child then. The witnesses' testimony rested largely on their descriptions of "transient" people in the lobby of the building. Tr. p. 95.
At first glance this evidence appears to support this finding. On further review, we conclude that it does not. For example, Johnson first rented a studio apartment in the same building in which he currently lives. The caseworker then insisted that R.J. could not be unified with Johnson unless he obtained a larger apartment. Accordingly, Johnson secured a one-bedroom apartment in the same building. Although the caseworker testified that he visited the apartment several times, there is no evidence that the OFC ever required or suggested Johnson obtain an apartment in a more suitable apartment building. In fact, there is no evidence that at anytime before the hearing, the OFC suggest or otherwise implied that Johnson would not be unified with R.J. because of the apartment building in which he lived.
The OFC waited until the hearing to notify Johnson that the apartment building in which he had been living since 2001 was unsuitable for a child. Given that Johnson had previously complied with all of the OFC's requirements and recommendations it was inappropriate and unfair for the OFC to request that Johnson secure a larger apartment and not inform him that the building itself was unsuitable until the hearing.[2]
In its brief, the OFC argues, "Drug environments are harmful. Apartments with transients, heavy traffic, and questionable residents can potentially be harmful." Appellee OFC's Br. p. 8. Those statements are undeniably true, however, we are contemplating the termination of Johnson's right to raise and nurture his own child. That right is constitutionally protected, and the evidence adduced by the OFC here, in our view, falls substantially *1038 short of that necessary to involuntarily terminate Johnson's parental rights.
Regarding the trial court's finding that Johnson has failed to provide a plan for R.J.'s care while he is at work, this finding is without evidentiary support. It is true that the previous caseworker assigned to R.J.'s case indicated that Johnson did not have a plan for R.J.'s supervision while he was at work. However, at the time of the hearing, it had been fifteen months since she had last worked on the case. We fail to see how this evidence is relevant to whether Johnson had a plan for R.J.'s supervision at the time of the hearing. See In re L.S., 717 N.E.2d 204, 208 (Ind.Ct.App.1999) (observing that the trial court must judge parental fitness at the time of the hearing), trans. denied (2000), cert. denied, 534 U.S. 1161, 122 S.Ct. 1197, 152 L.Ed.2d 136 (2002).
Although the current caseworker testified that he was unaware of any such plan and that Johnson's sister was not available to care for R.J. while he was at work, he also testified his last contact with Johnson had almost three months prior to the hearing. In fact, the caseworker agreed that he made no contact with Johnson to determine whether he had made progress toward arranging for R.J.'s care while he was at work. Thus, to the extent that the trial court was required to determine parental fitness as of the time of the hearing, this evidence is also irrelevant to whether Johnson had arranged for someone to care for R.J. while he was at work.
The only evidence regarding Johnson's arrangements for R.J.'s care as of the time of the hearing was from a woman who had helped him throughout the OFC's involvement in the case. She testified that she had arranged for a woman in Johnson's apartment building to watch R.J. while Johnson was at work. This woman had met Johnson and R.J. and was described as "very pleasant" and "down to earth." Tr. p. 111. The OFC not being aware of Johnson's plan and making no recent attempts to discover such is not the same as Johnson having no plan for R.J.'s care. Based on this testimony we must conclude that this finding is also unsupported by the evidence.
The OFC asserts that had Johnson been serious about parenting R.J., the OFC's involvement in the case would not have lasted four years. The OFC contends that the amount of time R.J. had been in foster care was due to Johnson's continuing and unsuccessful attempts at completing his case plan. However, during this time, Johnson was located, established paternity of R.J., obtained steady employment and a one bedroom apartment, completed parenting classes, substance abuse counseling, and psychological evaluations, and maintained regular visitation with R.J. There is no indication of Johnson's unwillingness to cooperate with the OFC or that he failed to promptly complete any of the OFC's programs. This assertion is simply unsupported by the record.[3]
Many of the OFC's witnesses recommended the termination of Johnson's parental rights because it is in R.J.'s best interests. This alone, however is not a basis for termination of one's parental rights; it is only one of several factors a trial court must consider before granting *1039 an OFC's petition to termination parental rights. See Ind.Code § 31-35-2-4.
Could there be a more suitable place for Johnson to raise his child? Could Johnson have extended more effort in securing and establishing a plan for R.J.'s supervision? The answer to these questions is yes, of course. But because these questions are answered in the affirmative, does not mean Johnson is unfit.
There is a real possibility that R.J. might be "better off" if Johnson's rights are terminated and she is placed as the OFC requested. However, the OFC did not supply the evidence required to grant that request. Parental rights cannot and should not be terminated on the potential for harm or because some hypothetical circumstance may come true. These types of speculative situations exist in many different environments, but are not bases for the termination of parental rights. We realize a child's safety and well-being is in the balance. However, we must apply the law as it exists, and in this case the OFC has not carried its burden.
The evidence presented at the hearing does not support many of the trial court's findings. Importantly, there is not clear and convincing evidence to support the trial court's findings that Johnson failed to provide safe and adequate housing or that he has failed to provide a safe plan for R.J.'s care while he is at work. Without such findings, the trial court's conclusions that the conditions that resulted in R.J.'s placement outside the home will not be remedied or that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to R.J.'s well-being are clearly erroneous.

Conclusion
Several of the trial court's findings are not supported by the evidence. Thus, its conclusions that the conditions resulting in R.J.'s placement outside the home will not be remedied and that the continuation of the parent-child relation ship poses a threat to R.J.'s well-being are clearly erroneous. We reverse.
Reversed.
KIRSCH, C.J., and BAKER, J., concur.
NOTES
[1] R.J.'s mother did not challenge the petition to terminate her parental rights and is not involved in this appeal.
[2] The OFC provided no evidence that Johnson's apartment itself was unsafe or unsuitable for R.J.
[3] In a footnote in its brief, CASA asserts, "mere participation in the OFC's programs and compliance with the OFC's demands is not sufficient to show that the conditions that resulted in R.J. [sic] removal have been or are likely to be remedied." Appellee CASA's Br. p. 19 n. 19. CASA provides, however, no analysis as to how Johnson caused R.J. to be removed from her mother's custody. Further, we cannot simply ignore Johnson's continued cooperation with the OFC in this case.